UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEVE GARRISON,

    Plaintiff,

v.

DEPARTMENT OF CORRECTIONS; et al.,

    Defendants.

No. C 05-2112 MHP (pr)

**ORDER GRANTING SUMMARY JUDGMENT**

**INTRODUCTION**

This case is now before the court for consideration of defendants' motion for summary judgment. For the reasons discussed below, the motion will be granted.

**BACKGROUND**

In his amended complaint, Garrison alleged that he was subjected to cruel and unusual punishment by correctional officers Garcia-Huerta and Torres on February 3, 2005 while he was incarcerated at the Santa Clara County Jail.

The following facts are undisputed unless otherwise noted:

On February 3, 2005, Steve Garrison was an inmate at the Santa Clara County main jail, apparently having been arrested for a parole violation. Arturo Garcia-Huerta and Daniel Torres were correctional officers in the Santa Clara Department of Corrections on duty at the main jail.

On February 3, 2005, Garrison was in his cell making noise and causing a disturbance in his housing unit. Correctional officer (C/O) Garcia-Huerta states that Garrison was banging on the cell door and Garrison states that he was clapping his hands and "having church." Complaint, p. 3.

C/O Garcia-Huerta went to Garrison's cell, opened the door to talk to him, and asked him to stop banging on his door. Garrison responded by saying, "'Fuck you. I ain't doing nothing wrong.'" Garcia-Huerta Decl., ¶ 2. Garcia-Huerta then ordered Garrison to turn around and put his hands behind his back to be handcuffed and taken out of the housing unit. Garrison refused to comply. Garcia-Huerta repeated his orders two more times and then called for assistance. Garrison raised his hands in a manner that appeared to Garcia-Huerta that Garrison was going to hit him. Garcia-Huerta sprayed Garrison with pepper-spray. Garrison struggled with Garcia-Huerta and was handcuffed with the assistance of officer Torres.

Officer Torres had arrived in response to a radio call to assist Garcia-Huerta in handcuffing Garrison and locking down the unit. Torres used only his gloved hands to touch Garrison because Garrison had pepper spray on him. Torres helped Garcia-Huerta handcuff Garrison in his cell. Garcia-Huerta then started escorting Garrison out of the housing module and Torres turned his attention to directing the other inmates in the module to lock down. Torres heard scuffling behind him and turned to see Garcia-Huerta struggling with Garrison, who at that point was on the ground. Torres ran over to assist Garcia-Huerta, holding Garrison down by pressing Garrison's back with Torres' gloved hands. Garcia-Huerta and Torres then picked Garrison up and took him out of the module. Torres states that he did not "knee" Garrison in the back or jump on him. Garrison's original complaint stated that Torres put his knee rather than his hands on Garrison's back.

Garrison was taken to wash off the pepper spray and was checked by medical staff. He was put in a holding cell for a couple of hours. After he was cleared by the medical staff, Garrison returned to his cell.

2

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to the claims occurred in Santa Clara County, which is located within the Northern District. See 28 U.S.C. §§ 84, 1391(b). This Court has federal question jurisdiction over this action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (citations omitted).

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. See id. at 631.

3

**DISCUSSION**

A.     The Evidence

Before turning to the merits, the court addresses the state of the evidence. In evaluating a motion for summary judgment, the court must consider all admissible evidence before it. The court would even consider a verified pleading, which may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. See Schroeder v. McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).

The problem for plaintiff is that, with one exception, none of the materials he has filed can be considered in opposition to the motion for summary judgment because they are not signed and/or not verified. The only filing that is both signed and verified is the original complaint filed on May 23, 2005. In that complaint, Garrison states that Garcia-Huerta "OCed me while I was in my cell 'having church' clapping my hands. No reason, none. Called me a 'mother fucker' while spraying me." Complaint, p. 3. And Garrison states that, after Garcia-Huerta slammed him to the ground, "Torres came in and put a knee, he says his hands, down on my lower back." Id. Thus, while Garrison has stated in his complaint that the pepper-spraying was unprovoked, he has presented no admissible evidence other than his complaint that can be considered at the summary judgment stage. The allegation that the pepper-spray was unprovoked, being conclusory in nature, is not sufficient to defeat summary judgment in light of his failure to counter to Garcia-Huerta's specific statements as to the sequence of events that day.

The five statements Garrison has filed from other inmates cannot defeat summary judgment. Only one (i.e., the one from inmate Somnang Kim) is even signed, but it is not signed under penalty of perjury. Furthermore, Kim's statement is not helpful to Garrison's cause because Kim does not say he saw any correctional officer do anything wrong. Kim

4

states only that he saw that the handcuffed Garrison was escorted out of the housing unit in a cooperative manner.

A few weeks after defendants filed their motion for summary judgment, Garrison filed a document labeled "plaintiff's motion for a summary judgment" that responded to the defendants' motion. The court evaluated the filing as an opposition brief. To the extent plaintiff's filing was actually intended as a motion for summary judgment, the motion is DENIED because it is unsigned, lacks evidentiary support on a claim on which he has the burden of proof, and does not show plaintiff's entitlement to judgment as a matter of law. (Docket # 35.)

Notwithstanding the above-mentioned filing, a few weeks after defendants filed their reply brief, Garrison filed a motion to file a late opposition to defendants' motion for summary judgment. The motion is DENIED because an opposition brief (docket # 35) had already been filed and cause was not shown to allow Garrison to have a second opportunity – after defendants had already filed a reply – to argue his opposition to the motion. (Docket # 37.) Even if the late opposition brief (docket # 38) was allowed, it would not aid Garrison's cause because it did not come with any admissible evidence sufficient to defeat summary judgment.

B.   Eighth Amendment Claim

A prisoner has the right to be free from cruel and unusual punishment, including physical abuse by guards. Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 6 (1992) (citing Whitley v. Albers, 475 U.S. 312, 317 (1986)). In determining whether the use of force was for the purpose of maintaining or restoring discipline, or for the malicious and sadistic purpose of causing harm, a court may evaluate the need for application of force, the relationship between that need and the amount of force used, the extent of any injury inflicted, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity

5

of a forceful response.  See Hudson, 503 U.S. at 7; see also Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979) (guards may use force only in proportion to need in each situation).

Applying the several Hudson factors to the evidence before the court leads to the conclusion that the force used by defendants did not violate Garrison's Eighth Amendment rights.

There was a need for the use of some force against Garrison, and the amount of force used was in reasonable proportion to that need.  Garrison refused repeated orders to submit to handcuffs and raised his hands in a manner that Garcia-Huerta interpreted to be an effort to hit Garcia-Huerta.  Squirting Garrison with pepper-spray was a reasonable response to that conduct.  Forcing the struggling Garrison to the ground to handcuff him and then later pushing him to the ground and Torres pressing down on his back (with hands or a knee) to restrain him when he again struggled with the escorting officer Garcia-Huerta also was force reasonable in relation to the need for it.

The extent of the injury inflicted was not great.  Garrison suffered the very unpleasant effects of pepper-spray, but those effects were temporary.  He was immediately taken to wash off the pepper-spray and within a few hours was medically cleared to return to his cell.  He also had back problems that first arose several weeks after the incident.

The threat reasonably perceived by the responsible officials was not insignificant.  From C/O Garcia-Huerta's perspective, Garrison was an inmate disobeying repeated orders to be handcuffed and who was about to hit him.  Garcia-Huerta sprayed Garrison to avoid being hit by an inmate.  From C/O Torres' perspective, he was arriving to help subdue an inmate in his cell struggling to avoid being handcuffed.  When, shortly thereafter, Torres was dealing with other inmates and heard a struggle behind him, he again was dealing with an inmate struggling against the escorting officer.  Regardless of whether it was his knee or his hands that were applied to Garrison's back, Torres did those acts to gain control over a resisting inmate.

Finally, before C/O Garcia-Huerta pepper-sprayed Garrison, he tried verbal orders three times to try to get Garrison to submit to handcuffing.  The orders were unsuccessful.

6

There is no evidence that, once Garrison brought his hands up as if to strike Garcia-Huerta, there was an opportunity for anything other than immediate physical force to stop Garrison from hitting him. And the force used, pepper-spray, was a measured response to the situation.

The undisputed evidence shows that (1) Garrison was repeatedly ordered to submit to being handcuffed, (2) he refused to comply with the orders, (3) he raised his hands as if to strike Garcia-Huerta, (4) Garcia-Huerta then pepper-sprayed Garrison, (5) a struggle ensued when Garcia-Huerta tried to put handcuffs on Garrison while they were still in the cell, (6) Torres assisted in restraining the struggling Garrison while the handcuffs were applied, (7) Garrison again started to struggle when he was being escorted out of the housing module, (8) Garrison was then pushed to the ground by Garcia-Huerta and Torres helped hold him down by pushing Garrison's back with his hands or a knee. Viewing the evidence in the light most favorable to Garrison, no reasonable jury could find that defendants applied force maliciously and sadistically for the very purpose of causing harm. Garrison failed to establish a triable issue of fact as to whether he was subjected to excessive force by defendants. Defendants are entitled to judgment as a matter of law on the Eighth Amendment claim.

B.  Qualified Immunity Defense

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "'provides ample protection to all but the plainly incompetent or those who knowingly violate the law.'" Burns v. Reed, 500 U.S. 478, 495 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular sequence of questions to be considered in determining whether qualified immunity exists. The court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a

7

constitutional right?" Id. at 201. If no constitutional right was violated if the facts were as alleged, the inquiry ends and defendants prevail. See id. If, however, "a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The first step under Saucier is to determine whether there was a constitutional violation. As discussed above, the evidence in the record does not establish an Eighth Amendment violation. The analysis therefore need not and will not proceed to the second step of the Saucier analysis. Defendants are entitled to judgment as a matter of law on the qualified immunity defense.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED. (Docket # 23.) Plaintiff's motion for summary judgment is DENIED. (Docket # 35.) Plaintiff's motion to file a late, second, opposition is DENIED. (Docket # 37.) The clerk shall close the file.

IT IS SO ORDERED.

Dated: August 29, 2006

_____
Marilyn Hall Patel
United States District Judge